In re Burkhart.

[Cite as In re Burkhart, 15 Ohio Misc. 170.]

(Nos. 2896, 2892 and 2895—Decided July 8, 1968.)

Juvenile Court of Warren County.

*Mr. P. Daniel Fedders*, for complainant.
*Mr. Scott H. Ray, Jr.*, for parents.

Davis, J.   These causes originated June 25, 1963, when separate complaints were filed in the Juvenile Division of the Montgomery County Court of Common Pleas alleging that said minor children were dependent-neglected. The complaints were sworn to and signed by a member of the Dayton Police Department and indicated that the father was Kelly Burkhart whose address was unknown and that the mother was Nora Burkhart whose address was 339 Richard Street apparently in Dayton, Ohio.

August 14, 1963, said Juvenile Court found that said children had a legal settlement in Warren County, Ohio,

and transferred and certified said cases to the Juvenile Court of Warren County, Ohio, pursuant to Section 2151.36, Revised Code.

November 1, 1963, the Warren County Juvenile Court ordered that the hearing of the cases be continued and that said children be continued in the temporary care of the Warren County Child Welfare Board.

August 10, 1967, the Executive Secretary of the Warren County Child Welfare Board filed another complaint charging said children to be dependent-neglected children, "in that they lack proper parental care because of the faults and habits of their parents, and whose condition and environment is such as to warrant the state, in the interest of the said children, in assuming their guardianship, all contrary to Sections 2151.03 and 2151.04, Revised Code—"

November 18, 1967, the court found that said children lacked proper parental care because of the faults and habits of the parents, Sonia LaSeur and Nora LaSuer and they were ordered placed in the permanent care and custody of the Warren County Child Welfare Board.

March 14, 1968, the court vacated and set aside the judgment granting permanent custody to the Warren County Child Welfare Board and further continued said children in the temporary custody of said board.

Because of the order vacating the judgment of March 14, 1968, these cases revert to their status of November 1, 1963. No commitment of temporary care has yet been made as the result of a completed hearing. The causes on that date were merely continued and temporary care ordered to the Warren County Child Welfare Board pending final hearing.

Since these children were removed from the home, almost five years have elapsed without a final determination as to even a temporary order. This is entirely too long and makes the present task even more difficult.

By agreement of counsel, all three cases have been consolidated for this hearing.

The evidence of this hearing shows that the three

children herein were born to Nora Burkhart LaSeur at a time when Nora LaSeur was estranged from her first husband, Kelly Burkhart, but not legally divorced. The father of said children is Sonia LaSeur. Eudora was born Sept. 12, 1960; Sonie Lee Nov. 8, 1961; and Kenneth Jefferson Nov. 7, 1962.

June 25, 1963, Nora Burkhart, now LaSeur, was charged with contributing toward the neglect of her six minor children, including the three children here involved by complaint filed in the Division of Domestic Relations, Court of Common Pleas of Montgomery County, Ohio.

June 28, 1963, Nora Burkhart (LaSeur) was found guilty of said charge and on the 9th day of January, 1964, she was sentenced to the city of Dayton Workhouse for a period of six months and ordered to pay a fine of $300 and costs. Imposition of sentence was suspended on the following conditions.

1. That defendant refrain from any illicit relations.

2. That she live as a law abiding citizen.

3. That she provide a proper home and parental care for her minor children.

4. That she pay the courts costs.

5. That she is hereby placed on five years probation.

Probation has not been revoked and Nora Burkhart remains under probation to said court at the time of this hearing.

Nora Burkhart LaSeur was divorced from Kelly Burkhart January 28, 1964, and she married Sonia LaSeur February 10, 1964. Twin children have been born the issue of this marriage on Nov. 22, 1964, and are living in the home of Sonia and Nora LaSeur in Warren County.

Three witnesses testified in support of the complaint. The policewoman who filed the original complaint in June 1963, a caseworker and the executive secretary of the Warren County Child Welfare Board who came to her position in 1965. The policewoman testified as to the neglect of the children in 1963, but she had no personal knowledge of their condition and environment subsequent to that time. The caseworker and executive secretary

testified concerning the situation since 1965, but had no personal knowledge of the situation in 1963. Nora LaSeur and Sonia LaSeur, together with two of their older children, friends, relatives and acquaintances testified as to the satisfactory condition of the home and the proper care of the children when in the home.

Since the burden of proof lies with those who support the complaint, we shall consider this testimony first. This court finds on the basis of the testimony of the policewoman and the conviction of Nora Burkhart (LaSeur) of contributing to the neglect of her children that said children were neglected children in 1963. It is also clear that said children were neglected by their parents at least up to and including the time they were living at 36 Buckeye Street, Dayton, Ohio, in November 1965. Admittedly, this was an area of saloons and bars and not a proper environment authorizing the return of the children to the home. Mr. LaSeur did not maintain steady employment and Mr. and Mrs. LaSeur moved frequently. Had this action been heard at any time from June 1963 to November 1965, this court is of the opinion that an order to declare the children neglected and dependent would have been proper and the children should have been placed outside the home.

Little is known from the testimony as to the contacts of Mr. and Mrs. LaSeur with the Child Welfare Department from 1963 to 1965, but it is clear that antagonistic feelings developed. The record shows that since 1965, three calls were made to the LaSeur home by representatives of the child welfare department, two in Dayton and one in Warren County. The evidence indicates that Nora LeSeur has visited with her children in the foster homes many times and has continued to make inquiry and attempts to have her home approved and her children returned. It was the sincere opinion of the child welfare personnel that Mr. and Mrs. LaSeur had not changed their ways sufficiently to provide a satisfactory home for their children.

What then, is the basis for determination of this case? What are the issues? What does the law require?

The provisions of Section 2111.08, Revised Code, is the beginning point. In essence, parents are the natural custodians of their offspring. But parents may forfeit or lose the right of custody by neglect or inability to discharge their legal responsibilities.

*In re Zerick,* 74 Ohio Law Abs. 525, sets forth the principle that even where the parent has been declared unfit, the child should not be removed permanently if circumstances change for the better.

Thus, an obligation exists in the case of a child removed from the temporary care of its parents, to return the child to parental custody if the parents and their circumstances change sufficiently to warrant the child being returned to parental custody. It is not necessarily a question of once guilty of neglect, always guilty of neglect. It is not a question of whether or not someone else might better rear the child. If this were so, one half of all the children in the world should be removed from their homes and placed in the home of the better parents of the remaining half.

It is also equally clear and well established authority that whether the charge be neglect, because of lack of proper parental care because of the faults and habits of the parents, or dependency, because of the condition and environment warranting the state in the interest of said children to assume their guardianship, they must exist as of the time of the hearing. *In re Kronjaeger,* 166 Ohio St. 172. Neglect or dependency must be based on evidence with respect to whether the child was receiving proper parental care in a proper environment in its home at the time of the hearing. *In re Minton,* 112 Ohio App. 361.

There are always two steps to any neglect or dependency type action before a child should be removed from his parents. First, there must be an adjudication, a finding by the court, that the child is neglected or dependent. Then and only then can the court consider the second proposition, in whose custody should the child be placed for its best interest and welfare. The question of what is for the best interest of the child does not exist unless there has first been an adjudication of neglect or dependency. For,

without such a finding, the court is without jurisdiction to determine what is best for the child. Herein lies an analogy to much of the current criticism of juvenile court procedure in delinquency hearings. In their haste to provide "better" for a child, courts have oftentimes gone to the second proposition without having adequately adjudicated the first.

Turning to the case at bar, the neglect or dependency should have been continuing or in existence at least on the date of the filing of the second complaint on August 10, 1967. Although testimony was received that indicated that the housing facilities of Mr. and Mrs. LaSeur were undesirable and that Mr. LaSeur has held numerous different jobs, the executive secretary of child welfare stated that they have never denied that Mrs. LaSeur's housekeeping standards are adequate and when specifically questioned concerning the faults and habits of the parents stated that she had no personal knowledge of the faults or habits of either Mr. or Mrs. LaSeur. There is no indication that any attempt was ever made by either the Montgomery County Child Welfare Department or the Warren County Child Welfare Department to remove the twins from the home from the date of their birth on Nov. 22, 1964, to the present time. This should have been done if the conditions or environment is such or the faults and habits of the parents are such that they should not remain in the home. The record shows that Sonia LaSeur has been employed at the Dayton State Hospital Farm since May 4, 1967, receiving $1.84 per hour. Although he may be in the process of changing employment again, the situation is improved.

In order to sustain the neglect charge, it is necessary that the evidence produced shows that any fault of the parents occurring in the past is at the time of the hearing of such charge effective to render such parents unfit and unsuitable to have the custody and care of such child, and that they are then at such time, by reason of such fault, incapable of extending to such child proper parental care. *In re Hock*, 55 Ohio Law Abs. 73.

It is the finding of this court that at the time of this

hearing, the children are not neglected nor would they be if living in the home of the parents. It is also the finding of this court that at the time of this hearing, the children are not dependent. *In re Darst*, 117 Ohio App. 374. Illegitimacy does not constitute dependency. *Smith* v. *Privette*, 13 Ohio Law Abs. 291. The parties hereto have intermarried and said children may be legitimatized.

It has been pointed out that these children have been away from their natural parents for a long time and they have made attachments to others in prospective adoptive homes and this has created a most difficult problem. The fault, however lies in the fact that the matter was not heard and proper action taken in the best interest of the children four or five years ago. The passage of time and the delay in the hearing of this cause can not now be used to reason against the application of the law.

There being insufficient proof of neglect or dependency at the time of this hearing, it is only just that said children should be returned to their parents.

It is to be noted however, that if Sonia and Nora LaSeur should revert to any of their former faults or habits which result in neglect of their children, charges should be refiled, the parents prosecuted and the children removed from the home.

The complaints herein shall be dismissed and the children ordered returned to their parents Sonia and Nora LaSeur. Counsel for the parents will prepare and submit for approval of the prosecutor and the court an entry in accord with this opinion.

(Davis, J., of Highland County sitting by assignment in Warren County.)