In re MESSNER et al.

34

(No. 804—Decided June 25, 1969.)

*Messrs. White & White*, for appellants.
*Mr. Frederick F. Waugh*, for appellee.

BROWN, P. J.   This is an appeal on questions of law from a final order of the Juvenile Court of Huron County, incident to a dependency complaint filed pursuant to Section 2151.27, Revised Code, charging that the two Messner children, namely, Mark, aged 8, and Cheryl Ann, aged 5, were charged as being dependent children within the meaning of Section 2151.04, Revised Code.

The appeal was perfected by Patricia Messner Dowley, mother of these children, as appellant, and on behalf of such children, from the final order of the Juvenile Court in the dependency proceeding made on March 1, 1969, which reads as follows:

"It appearing to the court that the Circuit Court of Jackson County, Michigan, has jurisdiction of the children herein, it is ordered that said children be released to officers of said court for their return to Jackson County,

Michigan, and that upon their release to said officers the complaint filed herein be dismissed. Costs taxed to complaining witness.''

The dependency complaint was filed by the children's father, Franc Messner. No oral testimony was introduced at the dependency hearing. The pertinent part of the written stipulations of the parties admitted in evidence narrates that the parents had been divorced in 1963 by the Circuit Court of Jackson County, Michigan; that in the divorce decree custody of the children named had been granted, until further order of that court, to Patricia Messner; that in 1965 the same Michigan court modified custody to provide that custody be granted to the paternal grandparents, John and June Messner; that from the time of the divorce actual custody of the children has been in the mother who claimed Ohio as her residence; that the mother contended that she was not served with a notice for the 1965 change-of-custody proceedings in the Michigan court; and that that court had no jurisdiction to modify custody.

The stipulations also state that on February 28, 1969, the mother, Patricia Messner Dowley, filed in the Michigan court, where the divorce and custody was originally granted, a petition to modify a previous order of that court relating to custody and that there had been no finding by the Michigan court that either the father or the mother of these Messner children was unfit.

The final order of the Juvenile Court stated above verbatim, which gives jurisdiction of the Messner children to the Michigan court, presents this legal question: Does an Ohio Juvenile Court have the jurisdiction under the power granted to it under Section 2151.23 *et seq.*, Revised Code, to order the release and custody of such children to the officers of the court of another state where custody is thereby taken from the mother without any finding of her unfitness and without any determination that such children are dependent?

Appellee, the state of Ohio, contends the Juvenile Court does have the power it exercised in this case, releasing jurisdiction over the children to the Michigan authorities, by reason of the catalogue of jurisdictional powers granted to

the Juvenile Court in Section 2151.23, Revised Code, which, as pertinent to this case, provides:

"(A) The Juvenile Court has exclusive original jurisdiction under the Revised Code:

"* * *

"(2) To determine the custody of any child not a ward of another court of this state:

"* * * ."

The Juvenile Court has only such jurisdiction as is specifically expressed and conferred under the sections in Chapter 2151, Revised Code. In the *Messner case,* the jurisdiction of the *Juvenile Court* was invoked under Section 2151.27, Revised Code, by the filing of a dependency complaint by the father of the Messner children charging, under oath, that the children lacked proper parental care and that their environment warranted the state to assume their guardianship. The procedure governing the jurisdiction and functions of the Juvenile Court on a dependency complaint under Section 2151.27 is specifically set out in Sections 2151.28 to 2151.35, inclusive. These sections provide that a hearing shall be had on a dependency complaint. The term "dependent child" is specifically defined in Section 2151.04, Revised Code. Before the Juvenile Court has any authority to change the custody of the children so as to take custody from a natural parent, there must be a finding that the child or children are dependent, as that term is defined in Section 2151.04. In this case, the Juvenile Court held no hearing on the charge of dependency and made no finding that the children were, in fact, dependent children.

The necessity and purpose of such hearing and finding is apparent from Section 2151.28, Revised Code, which requires a citation to be issued to the parents or persons having custody, notifying them of the time and place of the hearing, and from Section 2151.35, Revised Code, which provides what order and disposition of the dependency complaint the Juvenile Court may make *after* finding that the child is dependent.

The Juvenile Court of Huron County, in this case, made an order that it appeared that the Michigan court

had jurisdiction of the children. The Juvenile Court then ordered the children to be released to the Michigan authorities. It cannot be logically argued that the court made a determination of custody of the Messner children. What the Juvenile Court of Huron County did in this instance was to apprehend the children under the authority vested in the Juvenile Court for apprehension of dependent children, and on that basis assumed jurisdiction over the children and ordered them returned to the Michigan authorities. There is no provision in Chapter 2151, Revised Code, conferring any authority or jurisdiction for a Juvenile Court in Ohio to apprehend a child and return such child to a foreign jurisdiction without a hearing as to whether or not it would be for the best interests of the child.

Habeas corpus has always been a proper procedure in a court of competent jurisdiction under Chapter 2725, Revised Code, to determine illegal restraint or custody of children who are wards of a foreign jurisdiction, and the law is well settled in Ohio that a writ of habeas corpus will not issue returning children to a foreign jurisdiction unless it is shown that it is in the best interests of the children to do so.

The welfare of the child is a primary question and determining factor, and all other matters must yield accordingly, including the comity existing between states. *Paddock* v. *Ripley*, 149 Ohio St. 539; *In re McTaggart*, 4 Ohio App. 2d 359; *State, ex rel. Clark*, v. *Allaman*, 87 Ohio App. 101; *Weiss* v. *Fite*, 19 Ohio App. 309; *Elwood* v. *Elwood*, 3 Ohio Law Abs. 213; 4 A. L. R. 2d, annotation, at page 15 thereof; 26 Ohio Jurisprudence 2d 590 to 596, inclusive, Sections 32, 33 and 34.

In the *Messner case*, the children were with their natural mother in Huron County, Ohio, into whose custody they had been awarded by the Michigan court in its initial custody order. It is contrary to law for the Juvenile Court of Huron County to invoke the jurisdiction of its court in a dependency hearing and, with no regard for the best interests of the children, order them returned to Michigan to their paternal grandparents.

The appellee further asserts that the Huron County Juvenile Court could make the foregoing order releasing the Messner children to Michigan authorities without prior determination that these children are dependent, neglected, or delinquent, by reason of the decision of the Ohio Supreme Court in the case of *In re Torok*, 161 Ohio St. 585.

The *Torok case* is neither applicable nor controlling. In *Torok*, an illegitimate child was placed with petitioners by her natural mother.

Petitioners were paid by the natural parents for the child's care, but they became so attached to the child that they refused to redeliver the child to the natural mother.

In an effort to secure final custody, petitioners filed a complaint alleging the child was neglected and dependent.

The Juvenile Court held that the child was not neglected or dependent and that the natural mother was entitled to custody. In the *Torok case*, the Supreme Court (page 590 and paragraph two of syllabus) held that the Juvenile Court could, *after first finding the child was neither dependent nor neglected, determine custody*. Further, the result reached in *Torok, supra*, gave custody to a natural parent, the mother, where there was no finding of her unfitness.

In the case at bar the bill of exceptions shows that at a hearing on February 28, 1969, the Juvenile Court ordered excluded any reference to dependency,* but considered a stipulation by counsel concerned with jurisdiction of a foreign court. The journal entry of the court found that the foreign court had jurisdiction and provided that on delivery of the children to the officers of that court the dependency complaint would be dismissed. The *Torok case* is not authority for such a proceeding and finding.

---

*The Juvenile Court further explained that the court would listen to anything involving the determination whether or not the Michigan court had jurisdiction over the children and explained that dependency had nothing to do with the case. Although dependency was the gravamen of the complaint, nothing was there alleged in reference to jurisdiction of a foreign court or custody except the proposed guardianship of the state of Ohio because the condition and environment of the children warranted the state, in the interests of the children, in assuming their guardianship.

Lastly, the stipulation filed in Juvenile Court in the present *Messner case* exhibits that the mother, Patricia Messner Dowley, contends that she was never served with process notifying her of the 1965 modification-of-custody proceedings in the Circuit Court of Jackson County, Michigan, and that, consequently, the Michigan court had no jurisdiction to modify custody, which it purportedly proceeded to do by an order in 1965 awarding custody to the paternal grandparents. This raises the question as to what recognition or significance, if any, should be given by any Ohio court to the Michigan custody-modification order.

Since the mother in effect denies receipt of notice of the 1965 Michigan change-of-custody proceedings, then there was no personal jurisdiction over the mother in the *ex parte* custody proceeding resulting in an order which sought to take custody from her. The United States Supreme Court has decided this question. In a judicial proceeding brought in an Ohio court by a former husband against his former wife to obtain possession of their minor children, pursuant to a Michigan decree awarding custody to a person or persons other than the parents, the Ohio court need not give full faith and credit to the Michigan decree where that decree was obtained by the husband in an *ex parte* custody determination, subsequent to the divorce decree, in which the Michigan court had no personal jurisdiction over the nonresident wife. *May* v. *Anderson,* 345 U. S. 528, 97 L. Ed. 1221. 73 S. Ct. 840, paragraphs 1, 4, 5, and 6 of the L. Ed. headnotes: 26 Ohio Jurisprudence 2d 596, Habeas Corpus, Section 34, Effect of Divorce Proceedings and Custody Orders Therein.

The conclusions reached by us are consistent with the holding in *Torok, supra,* harmonize with the fundamental legal principles protecting the natural rights of parents, which stem from the relationship of parent and child. and do not depart from the statutory law contained in Chapter 2151, Revised Code, the Juvenile Court Code, prescribing the procedure and jurisdiction of the Juvenile Court in this area of the law. A parent has a right to custody of his child against all other persons unless and until in any court having jurisdiction there is a judicial hearing

and finding of incapacity or unfitness of such parent. *In re Duffy*, 78 Ohio App. 16; *Garcia* v. *Cardarelli,* 7 Ohio Law Abs. 262; *State, ex rel. Clark,* v. *Allaman,* 154 Ohio St. 296; *In re Konncker,* 30 Ohio App. 502; 33 Ohio Jurisprudence 2d 12, 13, Juvenile Courts, Section 6, Parent and Child Relationship Not Superseded.

The judgment of the Juvenile Court is reversed, and, entering the final judgment the Juvenile Court should have entered, this court renders final judgment dismissing the complaint at complainant's costs, and further orders that the order of the Juvenile Court releasing the Messner children to officers of the Circuit Court of Jackson County, Michigan, is null and void, and will not be part of such order of dismissal.

*Judgment reversed.*

STRAUB and POTTER, JJ., concur.

