In re East, Dependent Child.

[Cite as In re East (1972), 32 Ohio Misc. 65.]

(No. 3392—Decided July 27, 1972.)

Common Pleas Court, Juvenile Division, Highland County.

*Mr. John O. Crouse*, prosecuting attorney, for complainant.
*Mr. Forrest F. Beery*, for the mother.

Davis, J.   This matter is before the court on the complaint of the executive secretary of Highland County Children Services alleging that the two day old baby of an unwed mother is a dependent child whose condition and environment under R. C. 2151.04(C) is such as to warrant the state, in the interests of the child in assuming his guardianship. The court has assumed the custody of the two day old in-

fant and ordered him placed with children services pending final disposition of this cause.

The court's first consideration should be and always is to place the child with the natural parent if possible.

The court finds from the evidence presented that the 16 year-old unwed mother has been an incorrigible child who has been sexually promiscuous and has no visible means of supporting herself or her infant. The welfare department has refused to approve aid for the child in the mother's home. Because her mother could not control her, she was previously in a foster home where she was unruly and disobedient. She has indicated a desire to take the baby into the home of her parents where she is now living. Her father is an 80 year-old invalid and her mother has on previous occasions asked children services to take the baby since she and her husband could not help take care of it. The court finds that the grandparents, into whose home the mother proposes to rear the child, can give little or no assistance financially or emotionally to either the mother or the baby.

Counsel for the mother raises two principal issues: (1) that the mother must be found unfit before she can be deprived of custody of the child and (2) that the mother cannot be deprived of the custody of the child until she has had the opportunity to prove that she can properly take care of the child.

The court is of the opinion that these propositions address themselves to a charge of neglect rather than a charge of dependency.

A brief analysis of the neglect and dependency statutes appears necessary to place the instant case in proper perspective. By definition, R. C. 2151.03 requires the commission of culpable acts by the parents of the child to constitute the child neglected. Thus, the parents must abandon the child, through their faults or habits cause the child to be without proper parental care, neglect or refuse to provide the child with necessities or the special care made necessary by the child's mental condition or place or attempt to place the child in violation of the placement law. Under the neglected child statutes, the fault, unfitness or unsuitability of the parent is the crux of the cause and a

necessary element in the determination that a child is neglected.

This is not so in an action to determine that a child is dependent. By definition, R. C. 2151.04 does not require the commission of culpable acts or fault by the parents to constitute the child dependent. Rather, it specifically states in subsections (A) and (B) that if a child is homeless or destitute or without proper care or support, through no fault of his parents or that he lacks proper support by reason of the mental or physical condition of his parents, he is a dependent child.

Note that the neglect statute refers to lack of "proper parental care." The dependent statute refers to a child "without proper care" or "lacks proper care" expressly omitting reference to parental responsibility.

This brings us to subsection (C) of R. C. 2151.04 which states that a "dependent child includes any child whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." No reference is made here to the parents, their faults, unfitness or unsuitability. The two immediately preceding subsections (A) and (B) explicitly remove any requirement of the finding of fault on the part of the parents to the finding that a child is dependent. Why is this so?

This court is of the opinion that child dependency is not necessarily related to parental fault. It is the child's condition or environment that is the crux of the cause of dependency not the fault of the parent. Finding a mother unfit to care for her child is not a necessary condition precedent to a finding that a child is dependent because his condition or environment is such as to warrant the state in the interests of the child in assuming his guardianship.

To say that the faults of the parents cannot be considered in a charge under R. C. 2151.04 (C) is inaccurate. Certainly, the faults and failures of parents may be contributing factors creating a condition or environment such as to warrant the state to intercede in the child's behalf. Subsection (C) is intended to cover all those situations not otherwise specifically defined by the neglect or dependency statutes.

*In re Messner et al.*, 19 Ohio App. 2d 33, is claimed to be contrary to the opinion expressed herein. At cursory glance, it appears that the court held that the mother could not be deprived of the custody of her children in a dependency hearing unless the court first made a finding of incapacity or unfitness of such parent. A careful reading of the *Messner* case and the authorities cited therein bring us to a different conclusion. The court expressly stated in 19 Ohio App. 2d at p. 36:

"Before the Juvenile Court has any authority to change the custody of the children so as to take custody from a natural parent, there must be a finding that the child or children are dependent, as that term is defined in R. C. 2151.04. In this case, the Juvenile Court held no hearing on the charge of dependency and made no finding that the children were, in fact, dependent children."

With this statement this court agrees and has so held. First syllabus of *In re Burkhart* (1968), 15 Ohio Misc. 170;

"Before the court may consider what disposition should be made of children for their best interest and welfare, there must first be an adjudication that said children are neglected or dependent."

In *Messner, supra*, the appellate court rightly held that disposition resulting in change of custody could not take place until a judicial hearing had been held and an adjudication of dependency had been made.

Although the court in *Messner, supra*, appears not to have distinguished an adjudication of dependency with a finding of unfitness of the parent its decision did not turn on such a fine point. No hearing to determine either was had and thus no change of custody could be made. We must, however, sharply distinguish herein between a finding of unfitness of the mother and a finding that a child is dependent. As pointed out above, child dependency may exist without fault of the parent.

In the case at bar, this court finds that not only are the conditions and environment of the child set forth in the record such as to warrant the state, in the interests of the child in assuming his guardianship, but also that the mother is unfit to rear the child. Her emotional insta-

bility, financial irresponsibility and lack of support, direction or control by her parents has resulted in her moral and social impoverishment. There is little to indicate the child's best interest or welfare would be served living with his mother in her parent's home.

This does not mean that the mother will always be denied any child born to her. A child born to this mother at another time under circumstances indicating a substantial maturing and change of conduct on the mother's part and conditions and environment not substantially detrimental to the best interests of such child would prevent a finding of dependency.

The second issue, to wit: that the mother cannot be deprived of the custody of her child until she has had the opportunity to prove that she can properly take care of him is likewise not well taken. In *In re Turner*, 12 Ohio Misc. 171, a permanent order of custody of a three-day old infant was granted on the grounds of dependency, although the mother had not had physical custody of the child. The court reasoned that the mother's unfitness could be predicted from her past history.

This court agrees that a child should not have to endure the inevitable to its great detriment and harm in order to give the mother an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the mother. The child has been born into a condition and environment that demands his removal from the custody of the mother now. The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.

Succinctly stated, in a dependency action, where the child's condition or environment warrant it, the child may be removed from the custody of the mother and it is not necessary that she first be given the opportunity to prove that she can properly care for said child.

It is therefore the opinion of this court that the permanent custody of the infant herein should be granted to the children services board.