[Cite as *In re A.S.*, 2010-Ohio-4873.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

IN THE MATTER OF:             :

                               :    Case Nos.  10CA16

A.S.                           :             10CA17

                               :             10CA18

Adjudicated Abused, Neglected,  :   **Released: September 30, 2010**

and Dependent Child.          :   <u>DECISION AND JUDGMENT</u>

                               :   <u>ENTRY</u>

_____

APPEARANCES:

James A. Wallace, Athens, Ohio, for Appellant Anthony Spears.

David G. Baer, Athens, Ohio, for Appellant Sarah Jeric.

William B. Biddlestone, Athens, Ohio, for Appellants George Spears and Nancy Spears.

C. David Warren, Athens County Prosecuting Attorney, and Myca S. Haynes, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee, Athens County Children Services.

_____

McFarland, P.J.:

{¶1}    Appellants, Anthony Spears and Sarah Jeric, mother and father of A.S., and George and Nancy Spears, grandfather and step-grandmother of A.S., appeal the decision of the Athens County Court of Common Pleas, Juvenile Division.  The trial court terminated Anthony Spears and Sarah Jeric's parental rights, denied the custody request of George and Nancy Spears, and awarded permanent custody of A.S. to

Athens County Children Services.  Because there was clear and convincing evidence that A.S's best interests required a legally secure placement with Children Services, we affirm the trial court's decision and overrule the appellants assignments of error.

## I. Facts

{¶2}    A.S., born in March 2008, is the biological child of appellants Anthony Spears and Sarah Jeric.  Both Anthony Spears and Sarah Jeric have a substantial and continuing history of drug abuse.  In 2005, Spears was convicted of felony possession of cocaine.  And due to Jeric's substance abuse during her pregnancy, A.S. was born addicted to opiates.  After birth, A.S. remained in the hospital for several weeks for treatment before being placed in foster care.  He has had continuing related health issues.  At the time of the permanent custody hearing at issue in this case, both Anthony Spears and Sarah Jeric were incarcerated due to drug offenses and other offenses.

{¶3}    In April 2008, shortly after A.S.'s birth, Athens County Children Services obtained an ex parte emergency custody order for A.S. and another child of Anthony Spears, J.S.  Children Services also filed a complaint seeking to have A.S. and J.S. adjudicated dependant children.  After holding a hearing on temporary custody, the Athens County Juvenile

Court continued the emergency custody order and scheduled an adjudication hearing. On the same day of the custody hearing, Anthony Spears and Sarah Jeric were stopped by police while returning from a methadone clinic in West Virginia. Police found 43 bindles of heroin in the car and $1200 in cash. Subsequent to the emergency custody hearing, George and Nancy Spears, as grandfather and step-grandmother, filed a motion to intervene and a motion for custody of both A.S. and J.S.

{¶4}    The trial court subsequently found A.S. to be an abused, neglected, and dependent child. The court awarded temporary custody of A.S. to Children Services in September 2008 and Children Services has retained custody since that decision. The trial court also found J.S. to be a dependent child. Anthony Spears and George and Nancy Spears appealed the decision as to J.S., but not as to A.S. We reversed the trial court's decision and remanded the case in *In re J.S.*, 4th Dist. No. 08CA26, 2009-Ohio-1621 and *In re J.S.*, 4th Dist. No. No. 08CA27, 2009-Ohio-1622. On remand, the trial court found J.S. was not dependent and dismissed the case.

{¶5}    The trial court subsequently held multiple review hearings on the matter. After each hearing, the court continued temporary custody and determined that Children Services had made reasonable efforts by providing case management, foster care, visitation and referrals. In September 2009,

Children Services moved to modify disposition to permanent custody of A.S. Anthony Spears and Sarah Jeric both contested the motion.

{¶6} After a full hearing on the motion for permanent custody, in which all parties were represented by counsel, the trial court terminated the parental rights of Anthony Spears and Sarah Jeric and awarded permanent custody of A.S. to Children Services. Further, George and Nancy Spears' motion for custody was denied. Following that decision, Anthony Spears, Sarah Jeric, and George and Nancy Spears, each filed an appeal. We sua sponte consolidated their appeals and consider them together below.

## II. Assignments of Error

Anthony Spears' Assignment of Error

> THE TRIAL COURT'S DETERMINATION THAT GRANTING PERMANENT CUSTODY OF A.S. TO ATHENS COUNTY CHILDREN SERVICES IS IN HIS BEST INTEREST WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

George and Nancy Spears' Assignment of Error

> THE TRIAL COURT ERRED BY NOT PLACING AS [sic] WITH HIS PATERNAL GRANDPARENTS, VIOLATING APPELLANTS [sic] RIGHTS PURSUANT TO THE OHIO AND UNITED STATES CONSTITUTIONS.

Sarah Jeric's Assignment of Error

> THE TRIAL COURT ERRED BY NOT PLACING A.S. WITH HIS PATERNAL GRANDPARENTS, GEORGE AND NANCY SPEARS, THEREBY VIOLATING APPELLANT'S RIGHTS PURSUANT TO THE OHIO AND UNITED STATES CONSTITUTIONS AND THE OHIO REVISED CODE.

### III. Anthony Spears' Assignment of Error

**{¶7}** An appellate court will not overrule a trial court's decision regarding permanent custody if there is competent and credible evidence to support the judgment. *In re McCain*, 4th Dist. No. 06CA654, 2007-Ohio-1429, at ¶8. "If the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court." *In re Buck*, 4th Dist. No. 06CA3123, 2007-Ohio-1491, at ¶7. Therefore, an appellate court's review of a decision to award permanent custody is deferential. *McCain* at ¶8.

**{¶8}** "An agency seeking permanent custody bears the burden of proving its case by clear and convincing evidence." *In re Perry*, 4th Dist. Nos. 06CA648, 06CA649, 2006-Ohio-6128, at ¶13. Clear and convincing evidence has been defined as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *McCain* at ¶9, citing *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23.

{¶9}     In his sole assignment of error, Anthony Spears argues that the trial court's decision to award permanent custody of A.S. to Children Services was not supported by clear and convincing evidence.  Accordingly, we first state the appropriate test a trial court must apply in ruling on a motion for permanent custody.

{¶10}   Under R.C. 2151.414(B)(1), an agency seeking permanent custody must meet a two-part test before parental rights may be terminated and permanent custody awarded.  *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶31.  First, one or more of conditions listed in R.C. 2151.414(B)(1)(a) through (d) must apply:

{¶11}   "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶12}   (b) The child is abandoned.

{¶13}   (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶14}   (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * ."

{¶15}   An agency seeking permanent custody must also demonstrate by clear and convincing evidence that such action is in the best interest of the child.  R.C. 2151.414(D) sets forth the factors a court must consider in the best interest analysis:

{¶16}   "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶17}   (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶18}   (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section

2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶19}   (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶20}   (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶21}   Divisions (E)(7) to (11) include:  (7) whether the parent has been convicted of a number of listed offenses; (8) whether the parent has repeatedly withheld medical treatment or food; (9) whether the parent has placed the child at substantial risk of harm two or more times due to substance abuse and has rejected treatment two or more times or refused to participate in treatment; (10) whether the parent has abandoned the child; (11) whether the parent has had parental rights previously terminated.

{¶22}   Thus, to terminate parental rights and award permanent custody, a trial court must find that both parts of the two-part test under R.C. 2151.414 have been established.  In the case sub judice, it is undisputed that the first part of the test was met.  When the motion for permanent custody was filed, A.S. had been in the temporary custody of Children Services for more than twelve months of a consecutive twenty two month period.  As

such, R.C. 2151.414(B)(1)(d) applies.  Accordingly, our analysis shifts to the other prong of the permanent custody test, whether or not permanent custody is in the best interest of the child.

{¶23}   In his brief, Anthony Spears alleges that the court gave "scant attention" to section R.C. 2151.414(D)(1)(a), regarding the child's interactions with relatives and caregivers, and section R.C. 2151.414(D)(1)(d), regarding the need for a legally secure placement.  We strongly disagree with this assertion.  The trial court's decision clearly shows that it fully engaged in the required best interest analysis.  The court first cited the relevant Revised Code sections, R.C. 2151.414(D)(1)(a) through (e), and then analyzed each section as it pertains to the current matter.  As to R.C. 2151.414(D)(1)(a), the court stated the following:

{¶24}   "A.S. has seen little of his parents due primarily to their incarcerations, sporadic visitations; and unfitness to care for him.  He has half siblings on his biological father's side, but only sees a half-brother named [J.S.] under supervised or monitored situations.  An attempt was made to allow A.S. and [J.S.] to live together in foster care at a time when [J.S.] was also in the temporary custody of [Children Services].  [J.S.] was, however, removed from that home due to rage-like behaviors and threatening actions toward A.S.  The paternal grandparents now have

custody of [J.S.] and visit regularly with A.S., often bringing [J.S.] to said visits. Those visits are reported to be pleasant. A.S. enjoys a well-bonded relationship with the foster family where he has lived since his eventual release from the hospital after his birth."

{¶25} The court stated the following regarding 2151.414(D)(1)(d):

{¶26} "A.S. needs and deserves a legally secure placement which can only be achieved by a termination of parental rights and an award of permanent custody to [Children Services]. The paternal grandparents request that they be awarded custody of A.S. They have, over the years, had custody of their own children and children of various relatives. They clearly love A.S. and would spend as much time with him as they were allowed. They are currently capable of meeting his basic physical needs and reasonable expenses. *However, numerous factors convince the Court that A.S.'s best interests would be served by placing for adoption elsewhere.* [Emphasis added.]

{¶27} George and Nancy Spears have been criticized at various times in this case by different sources. It is clear that [Children Services] does not think it appropriate to place A.S. with them and opposed this Court's earlier decision to allow then [sic] custody of [J.S.]. Melanie Dawn Spears (mother of [J.S.]) also speaks negatively of the [sic] George and

Nancy Spears but acknowledges that she has a criminal past and is trying to gain custody of [J.S.] from them. A.S.'s mother has taken polar opposite positions in this case, once willing to expose all the damning information on the family and then reversing field to support their effort for custody. As in any case, the trier of fact weights the credibility.

{¶28}   It is undisputed that George Spears has a relatively recent felony conviction in this county for obstructing official business, a bargained result of an indictment for drug trafficking. It is also undisputed that Anthony Spears, the father in this proceeding, has regularly returned to the home of George and Nancy Spears to live at various times in his adult life. Half-sibling [J.S.] has spent much of his life in the home of George and Nancy Spears, sometimes with his father also there and sometimes without. The length and extent of the bonding between [J.S.] and George and Nancy Spears was a major factor in this Court's ultimate decision to allow [J.S.] to return to George and Nancy Spears' custody. However, A.S. has never lived with mother, father, or parental grandparents. He has always been in the custody of [Children Services] and the safety of a foster family since his release from the hospital. In light of his biological parents' serious shortcomings, the opportunity for him to be spared from the dysfunction, now and possibly in the future, is an opportunity that we must provide this

child.  Both parents will be released from prison within a few years, and one or both may well return to the home of the parental grandparents.  While there are good things to be said for family loyalty, this should not be the life that lies ahead for A.S.  The grandparents' motion for custody is denied."

{¶29}   In our view, the trial court's findings quoted above clearly refute Anthony Spears' allegation that the trial court preformed a "scant analysis" of the relevant Revised Code sections.  Further, our review of the transcript of the permanent custody hearing shows that the trial court's findings were fully supported by witness testimony and the other evidence presented.  Because A.S. had been in the temporary custody of Children Services for more than twelve months of a consecutive twenty two month period at the time of the permanent custody hearing, and because the trial court had clear and convincing evidence that awarding permanent custody to Children Services was in A.S.'s best interest, we overrule Anthony Spears' sole assignment of error.

{¶30}   As to Anthony Spears' argument regarding the proper standard of review to be applied in permanent custody cases, we see no inconsistency in our current standard of review and no reason to modify it. We reiterate that a trial court's decision must find that the movant met or did not meet its burden by clear and convincing evidence.  We then review the

record to determine whether there was competent and credible evidence to support the trial court's decision.

IV. Sarah Jeric's and George and Nancy Spears' Assignment of Error

{¶31}   Whereas Anthony Spears' assignment of error directly challenges the trial court's best interest analysis, both Sarah Jeric's and George and Nancy Spears' assignment of error is limited to whether the trial court should have placed A.S. in the custody of George and Nancy Spears. We review a trial court's decision to award or not award custody to an extended family member under an abuse of discretion standard.  *In re Perry*, 4th Dist. Nos. 06CA648, 06CA649, 2006-Ohio-6128, at ¶63; *In re A.C.*, 12th Dist. No. CA2006-12-105, 2007-Ohio-3350, at ¶17.  "Moreover, relatives seeking the placement of the child do not have the benefit of the presumptive rights afforded to a child's natural parents as a matter of law, and the relative's willingness to care for the child does not alter the statutory factors to be considered in granting permanent custody."  *Perry* at ¶64.

{¶32}   At the permanent custody hearing, the trial court heard an abundance of evidence indicating that placing A.S. with George and Nancy Spears would not constitute a legally secure placement.  As the trial court noted in its decision, George Spears was indicted for trafficking and felony possession of cocaine and marijuana in 2007.  As a result of a plea

agreement, George Spears pleaded guilty to obstructing justice, a felony.  He is currently on probation for that offense.  The court also heard the testimony of Melanie Spears, J.S.'s biological mother, stating that she had witnessed George Spears exchange pills for cash in his home.

{¶33}   Further, the court heard testimony that J.S., who is in the custody of George and Nancy Spears and who resides at their home, exhibits aggressive and hyperactive behavior.  In the past, when he resided in foster care, J.S.'s behavior worsened when A.S. was brought into the foster home.  The foster mother testified that on numerous occasions she was concerned that J.S. would harm A.S.  In one instance, she found J.S. standing over A.S's crib telling him to shut up or that he was going to kill him.  If George and Nancy Spears were granted custody of A.S., he would once again be living with J.S.

{¶34}   Additionally, Anthony Spears testified that at some point in the future he planned to put his family back together again and have A.S. and J.S. live with him.  Testimony indicated that if Children Services was not awarded permanent custody, A.S. may be, upon Anthony Spears' release from incarceration, once again exposed to his father's continuing criminal drug activity.  As a trial court stated, "[i]n light of his biological parents' serious shortcomings, the opportunity for [A.S.] to be spared from the

dysfunction, now and possibly in the future, is an opportunity that we must provide this child. Both parents will be released from prison within a few years, and one or both may well return to the home of the paternal grandparents. While there are good things to be said for family loyalty, this should not be the life that lies ahead for A.S."

{¶35}   As Sarah Jeric notes in her brief, granting legal custody to a member of the child's extended family is preferred over granting custody to a children services agency. But as Jeric also acknowledged, a trial court is not required to favor relatives if, after considering all the relevant factors, the court determines that a grant of permanent custody to the agency is in the child's best interest. *Perry* at ¶64. As shown above, and as we concluded in our analysis of Anthony Spears' assignment of error, there was clear and convincing evidence for the trial court in this matter to so determine. Accordingly, we find the trial court did not abuse its discretion in deciding not to award custody of A.S. to George and Nancy Spears. As such, Sarah Jeric's and George and Nancy Spears' assignments of error are also overruled.

**JUDGMENT AFFIRMED.**

Kline, J., concurring.

{¶36} I concur in judgment and opinion with the following observation.  In my view, the opinion should note that we assume without deciding that Sarah Jeric has standing to assert her sole assignment of error in Case Number 10CA18.  See *In re Hilyard*, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, & 05CA609, at ¶40.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion with Concurring Opinion.

For the Court,

BY:    _____
Matthew W. McFarland
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**