IN RE SMART, ALLEGED DEPENDENT MINOR.

---

(No. 84AP-24—Decided August 2, 1984.)

*Robert M. Storey,* for appellant Denise Malone Smart.

*Mary Jo Cusack,* for appellee Catholic Social Services.

*James Kura,* county public defender, and *John W. Keeling,* guardian ad litem for Ieasha Alice Smart.

STILLMAN, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, finding Ieasha Alice Smart, child of Denise Malone Smart, to be a dependent minor child and ordering her committed to the permanent custody of Catholic Social Services ("CSS") for adoption.

Denise Malone Smart has appealed, raising seven assignments of error as follows:

"I. The court erred in proceeding with the complaint, as complainant-appellee's failure to file an annual review, or a comprehensive reunification plan, as required by the dictates of Ohio Revised Code Section[s] 5103.151 and 2151.414 operated as a bar to the action.

"II. The court erred in admitting records from Aultman Hospital, Massillon State Hospital, Central Stark County Mental Health and Stark County Welfare Department as all records are hearsay, and do not fit within the business records exception, nor any other hearsay exception.

"III. The court erred in admitting the records of Aultman Hospital and Massillon State Hospital, as these records are subject to the patient-physician privilege codified in Ohio Revised Code Section 2317.02(B).

"IV. The court erred in admitting the testimony of John Kelly and the records from Stark County Mental Health Center as both are privileged and fall within the limits of Ohio Revised Code Section[s] 4732.19 and 2317.02(B).

"V. The court erred in admitting the testimony of Denise Smart from the preliminary hearing, since such testimony was hearsay, and not within the limits of Ohio Rule of Evidence 804.

"VI. The court erred in making a finding of dependency, since the testimony and exhibits were not based on conditions existing at the time of the hearing.

"VII. The court erred in committing the child to the permanent custody of complainant, under Ohio Revised Code Section 2151.353, because there was sufficient evidence to find that the mother would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to Section 2151.412 of the Ohio Revised Code."

Ieasha Alice Smart was born on December 8, 1980, in Canton, Ohio. Appellant signed papers granting voluntary temporary custody of the child to CSS on December 11, 1980 for the purpose of placing Ieasha in a foster home

in Franklin County. It was agreed that CSS would seek permanent custody through the court since appellant wished to permanently surrender the child for adoption but was prevented from doing so by the fact that the whereabouts of Ieasha's legal father, now deceased, were unknown.

This case arises from appellant's desire to regain custody of Ieasha, which intent she first communicated to Sister Claudine Smith, a CSS social worker, on June 11, 1981. At the time, Ieasha was still residing in a foster home, no action having yet been taken by CSS to obtain permanent custody. However, Sister Claudine Smith testified that she did not feel that it was in Ieasha's best interests to be reunited with her mother; and, from that time forward, the agency's position has been not to make any serious attempt to reunite the child with the mother. Sister Claudine Smith further testified that she told appellant that CSS would have to file for permanent custody immediately if appellant tried to visit Ieasha.

In fact, CSS, through Sister Claudine Smith, has twice filed complaints in the Franklin County Court of Common Pleas, Domestic Relations Division, Juvenile Branch, alleging in the affidavits that Ieasha is a dependent minor child. The first complaint was filed September 25, 1981. A referee conducted the adjudicatory hearing, and his recommendation that Ieasha be found not to be dependent was adopted by the trial court on March 24, 1982, and that decision was affirmed on appeal to this court in *In re Smart* (Apr. 14, 1983), Franklin App. No. 82AP-446, unreported. CSS appealed to the Ohio Supreme Court on May 6, 1983, and, by order dated September 14, 1983, the Supreme Court overruled the motion to certify (case No. 83-910).

On May 6, 1983, CSS also filed the second complaint for permanent commitment with the trial court, which com-

plaint forms the basis of this action. After a two-day adjudicatory hearing on August 11 and 12, 1983, the trial court found Ieasha to be a dependent minor. Hearing on the matter of disposition was held on November 17, 1983; and, by judgment entry dated December 6, 1983, the court ordered the commitment of the minor child to the permanent custody of CSS.

The threshold issue that must be determined upon this appeal is whether the evidence at the August 11 and 12, 1983 adjudicatory hearing supports the trial court's finding that Ieasha is a dependent child, since the court is authorized to make an order of disposition pursuant to R.C. 2151.353 only after a child is adjudged an abused, neglected or dependent child. *In re Cunningham* (1979), 59 Ohio St. 2d 100 [13 O.O.3d 78].

R.C. 2151.04 defines a "dependent child" as follows:

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'dependent child' includes any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

Even though she has never been in the custody of her natural mother, appellant herein, we find that the evidence supports the trial court's conclusion that Ieasha is a "dependent child" within the meaning of R.C. 2151.04(C), inasmuch as the conditions and environment within which the child would live if the court had found her "not dependent" would warrant the state, in the interests of the child, to assume her guardianship.

*In re Justice* (1978), 59 Ohio App. 2d 78 [13 O.O.3d 139]; *In re East* (C.P. 1972), 32 Ohio Misc. 65 [61 O.O.2d 38]; *In re Turner* (C.P. 1967), 12 Ohio Misc. 171 [41 O.O.2d 264]. The record shows that, since the first permanent commitment hearing when Ieasha was found "not dependent," appellant has involved herself in both alcohol and drug abuse and has been hospitalized for a drug overdose and other mental disturbances. In addition, appellant's relationship with her boyfriend, John Eilam, has degenerated into one marked by violence, and appellant is no longer earning a living.

Appellant's second through fifth assignments of error concern alleged errors in the admission of evidence at the adjudicatory hearing on the grounds that such evidence was either inadmissible hearsay, privileged, or both. We find no merit to any of these assignments of error, and they are accordingly overruled.

Records from Aultman Hospital, Massillon State Hospital, Central Stark County Mental Health Center and the Stark County Welfare Department were properly admitted into evidence pursuant to Evid. R. 803(6), the "business records" exception to the hearsay rule. The trial court properly excluded those portions of the records of Aultman Hospital and Massillon State Hospital containing privileged physician-patient communications, and properly admitted the records from Central Stark County Mental Health Center and the testimony of John Kelly, a psychiatric social worker at Central Stark County Mental Health Center, as neither fell within any applicable privilege. *Weis* v. *Weis* (1947), 147 Ohio St. 416 [34 O.O. 350]. And this court cannot even consider the alleged error in the admission of appellant's testimony from the preliminary hearing, inasmuch as, although "admitted" as evidence, it was not marked as an exhibit, and it has not been made part of the record on appeal herein.

By her sixth assignment of error, appellant contends that the trial court erred in adjudging Ieasha to be a dependent child where the most recent evidence in the record concerned conditions existing prior to March 1983, and did not relate to conditions at the time of the hearing in August 1983. Although it is true that the state of dependency must exist on the date of the hearing, and it is further true that the record concerns conditions existing several months prior to the filing of the complaint, there is no evidence of a substantial change in circumstances at the time of hearing sufficient to warrant a conclusion that the child was no longer dependent. *In re Chilcote* (Mar. 9, 1982), Franklin App. No. 81AP-740, unreported. Accordingly, appellant's sixth assignment of error is overruled.

Having determined that the trial court did not abuse its discretion in adjudicating Ieasha a dependent minor, we now turn to appellant's arguments directed at the disposition of the child.

Once a child is determined to be abused, neglected or dependent, the juvenile court has four options for disposition of the child pursuant to R.C. 2151.353. The child may be returned to his parents subject to any limitations or conditions the court finds to be appropriate. R.C. 2151.353(A)(1). The juvenile court may also commit the child to the temporary custody of a parent or relative, or an authorized institution or agency within or without the state. R.C. 2151.353(A)(2) and (3). If the court commits the child to the temporary custody of a non-parent under R.C. 2151.353(A)(2) or (3), a comprehensive reunification plan is required by R.C. 2151.412. And the court will make a determination to see whether there has been a good faith effort to implement the reunification plan if the agency moves to change the order of temporary custody to permanent custody. R.C. 2151.414(A)(1). However, the fourth

alternative in R.C. 2151.353 for disposition of a child adjudicated abused, neglected or dependent is to proceed immediately for permanent commitment to an authorized institution or agency where the juvenile court determines that:

"* * * the parents have acted in such a manner that the child is a child without adequate parental care, it is likely that the parents would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to section 2151.412 of the Revised Code, and the permanent commitment is in the best interests of the child. * * *" R.C. 2151.353(A)(4).

We are concerned here with an initial dependency determination followed by immediate permanent commitment pursuant to R.C. 2151.353(A)(4). Appellant's contention that a May 26, 1982 stay order of the court in the first permanent commitment case operated as a temporary commitment, requiring CSS to file a comprehensive reunification plan pursuant to R.C. 2151.412 prior to filing for permanent commitment under R.C. 2151.414, is without merit. That stay order merely maintained the *status quo* pending appeal of the court's determination that Ieasha was "not dependent" at the time of the hearing in the first permanent commitment case, *i.e.,* Ieasha remained in the custody of CSS to which she had been voluntarily surrendered at birth by appellant under R.C. 5103.15. Neither the stay order, nor the agreement by appellant surrendering the child to the temporary custody of CSS pursuant to R.C. 5103.15, constitutes a "commitment" for purposes of the requirements of R.C. 2151.412 and 2151.414. See *In re Miller* (1980), 61 Ohio St. 2d 184 [15 O.O.3d 211], paragraph one of the syllabus. Accordingly, failure by CSS to file a comprehensive reunification plan does not bar its action for immediate permanent

commitment under R.C. 2151.353(A)(4), and appellant's first assignment of error is overruled.

By her seventh assignment of error, appellant contends that, in any event, the trial court erred in immediately proceeding with permanent commitment under R.C. 2151.353(A)(4) because the evidence was insufficient to find that appellant "would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to section 2151.412 of the Revised Code." We agree. Even though a juvenile court does have the alternative immediately to grant permanent custody to an appropriate state agency upon determination that a child is abused, neglected or dependent under R.C. 2151.353(A)(4), permanent custody should only be granted at the initial disposition hearing under extreme situations where reunification is not possible. Specifically, a court cannot reach the determination under R.C. 2151.353 (A)(4) that "the child will continue to be a child without adequate parental care if a reunification plan were prepared" where there has been no good faith effort to reunite the child with his parents or evidence that such an effort to reunite would be futile.

In the instant case, Sister Claudine Smith, the CSS social worker, admitted that the agency had never made a serious attempt to reunite Ieasha with her natural mother. The only visitation that was ever arranged was pursuant to court order after the preliminary hearing in the first permanent commitment case. That visitation schedule required appellant to travel from Canton, Ohio to Columbus, Ohio to visit the child. The fact that appellant was only capable of making four such visits does not demonstrate the futility of setting up a comprehensive reunification plan, but, rather, demonstrates the lack of good

faith on the part of CSS in setting up visitation which required appellant, who was unemployed and without transportation, to either borrow a car or find $32.50 for the round-trip bus fare from Canton to Columbus. The unreasonable nature of this visitation schedule, coupled with the fact that the court found that Ieasha was not a dependent child as recently as November 23, 1981, the date of the hearing in the first permanent commitment case, demonstrates an abuse of discretion on the part of the trial court in determining that Ieasha would continue to be a child without adequate parental care if a reunification plan were prepared pursuant to R.C. 2151.412. Appellant's seventh assignment of error is accordingly sustained.

For the foregoing reasons, the first six assignments of error are overruled, and the seventh assignment of error is sustained to the extent that the trial court erred in proceeding immediately to permanent commitment pursuant to R.C. 2151.353(A)(4). The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court with instructions to modify its dispositional order to provide for temporary commitment and a reasonable reunification plan, and for such further proceedings as may be in accordance with law consistent with this opinion.

*Judgment affirmed in part, reversed in part, and cause remanded with instructions.*

WHITESIDE and REILLY, JJ., concur.

STILLMAN, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.